IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY T. MCHENRY, | No. C 07-2334 JSW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| TOM FELKER, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the Court. Although Petitioner was granted an extension of time to do so, he has not filed a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

A San Francisco jury found Petitioner guilty of murder. *See* Cal. Penal Code § 187. The jury also found true the allegation that Petitioner used a firearm causing great bodily injury and death. *See id.* at § 12022.53(b), (c), (d). He was sentenced to prison for twenty-five years to life.

The following facts are excerpted from the opinion of the California Court of Appeal:

> On the evening of December 17, 2001, Denisha Small was at a friend's house when Larry "Mookie" Skinner arrived. Skinner asked her for a ride to the store. Small drove Skinner to Frank's Market on 36th Street and parked

in front of the house next door to the market. Skinner entered the store. When he exited from the store, Skinner walked two or three feet before defendant approached him from behind, fired one gunshot to Skinner's head and fled. Small got out of the car and told someone standing in the doorway of the store to call the police. Small drove to her boyfriend Corey Hayes's house, and told him what happened. They returned to the scene where Hayes spoke to the police.

Detectives Ellis and Tirona responded to the scene and investigated Skinner's murder. Skinner was lying on the sidewalk with a large pool of blood near his head. Ellis found one .40-caliber bullet casing on the ground in front of Skinner. The victim's stepfather spoke with Ellis and identified Skinner.

Ellis and Tirona subsequently went to the home of Linda Davis, the victim's mother, and learned that Hayes had already told her the news. They subsequently sought to contact Small and Hayes and left messages for Hayes. Hayes contacted Ellis and both Hayes and Small went to the police station and were interviewed.

Ellis and Tirona interviewed Small. Small was hesitant to be interviewed and told the detectives she was afraid for her life because she thought the perpetrators of the shooting saw her. She initially said she did not get a good look at the shooter. Later, however, she was able to describe him as short, in his mid-twenties, with a "fade" hairstyle, maybe a mustache, and wearing a dark peacoat. She did not know his name, but said she saw his face and would never forget it. Two days later, she identified defendant's photograph in a photographic line-up.

At the time of the shooting, Small was living in the Crescent Park area of Richmond. Skinner was also from Crescent Park.

Ellis arrested defendant. In a search of defendant's house incident to his arrest, Ellis found a peacoat in defendant's closet. A criminalist tested the coat and confirmed the presence of gunshot residue on the cuffs.

Ellis and Tirona interviewed defendant who denied shooting Skinner. Defendant stated that he was at Frank's Market at about 3:00 p.m. to buy gin. From there, he went to his brother's duplex in Oakland to drink and "kick[ ] it" from about 3:30 p.m. to 9:35 p.m. when his wife picked him up and they went home to Antioch. He acknowledged that several people called him that night to tell him about the shooting. He also explained that there was a feud between the Easter Hill gang and the Crescent Park gang. Defendant said he was from Easter Hill but he was cool with everyone in the One Way gang now. He further stated, "I got Easter Hill" in response to Ellis's question, "[i]f you had to identify with a set, who would you identify with." Defendant thought the only reason someone would accuse him of the shooting was because he was from Easter Hill. He, however, denied being in a gang.

At trial, Small acknowledged that she did not want to testify and believed she was being harassed by the police and the district attorney's office. She testified that she did not see anything during the shooting and did not see the shooter. She subsequently testified that the shooter had a light complexion, his hairstyle was in a fade, and he wore a black peacoat. She identified defendant as the person she picked out of the photographic lineup.


> She said she picked him out of the lineup because she was tired of the detectives' harassing her. She denied any knowledge of gangs in Richmond or that she feared retribution for testifying. Videotapes of her interviews with the detectives were played for the jury.
>
> Tirona testified as an expert in gang activity in the City of Richmond. He testified that in 2001, young African-American men living in the Crescent Park, Easter Hill and One Way areas of South Richmond were involved in drug sales. A strong rivalry existed between the Crescent Park and Easter Hill gangs, with shootings occurring between the two groups. The One Way gang did not have a rivalry with either of the two other groups. Frank's Market was located in the One Way area. Tirona testified that witnesses from the gang areas are reluctant to testify for fear of retaliation by rival gangs as well as retaliation from the gang in the area in which they reside. Gang members do not want people to cooperate with the police even in identifying rival gang members. Tirona opined that it would be natural for people who live in Crescent Park to be very apprehensive about talking about any shooting that they witnessed.
>
> Chante Beard testified for the defense. She was married to defendant in 2001. She testified that she spoke to defendant at around 7:00 p.m. or 7:15 p.m. on the evening of the incident and he was in East Oakland. He asked her to pick him up when she got off work at 9:10 p.m. She left work at 9:10 p.m. and picked defendant up in East Oakland and took him home to Antioch. Defendant was drunk. She denied that the peacoat taken from defendant's closet belonged to him. On cross-examination, she admitted that she had purchased a peacoat for defendant in 2001.

*People v. McHenry*, 2006 WL 1727322, *1-2 (Cal. App. 2006).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion

3

opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

As grounds for habeas relief, Petitioner asserts that: (1) the trial court's admission of previously suppressed evidence violated Petitioner's right to a fair trial; (2) admission of the testimony of an incompetent witness violated his right to a fair trial; (3) the evidence was insufficient to support the verdict; (4) admission of hearsay violated his confrontation rights; (5) trial counsel was ineffective; and (6) appellate counsel was ineffective.

**I.     Admission of Evidence**

Petitioner contends that the trial court admitted evidence that previously had been

4

suppressed. (Amen. Pet. at (unnumbered) 2.)

Petitioner does not actually say what evidence he thinks should not have been admitted, but a claim that the trial court should not have admitted evidence of gang rivalries in Richmond was his main claim on appeal. The trial court had held that evidence of Petitioner's or the victim's purported gang affiliations was not admissible, but admitted some evidence of gang activity in Richmond for other purposes. It seems clear that this evidence is what Petitioner means when he refers to evidence that was suppressed but then admitted anyway – the claim he raised on direct appeal.[1]

The court of appeal set out the background:

> Prior to trial, defendant moved in limine to exclude evidence of gangs or gang affiliation. The trial court conducted a lengthy Evidence Code section 402 hearing to determine the admissibility of the evidence and heard the following foundational evidence.
>
> Ellis testified that he was the lead investigator on Skinner's murder. He interviewed Hayes who told him that the police should look in the One Way area for the shooter because the One Way gang was feuding with the Crescent Park Villains. Hayes said that Skinner had been shot once before and that he was in a feud with a rival gang member. Ellis determined that Skinner was affiliated with the Crescent Park Villains. Skinner's mother also told Ellis that Skinner had conflicts with other gangs. Ellis reviewed a report of the interview of the owner of Frank's Market who said that the victim of the murder was not from the area. The owner further stated that the victim was in the area a few weeks prior boasting to others about his ability to obtain drugs. In addition, the owner related a rumor that neighborhood drug dealers had hired someone to do their "hits" for them.
>
> Ellis interviewed defendant after his arrest. Defendant was familiar with gangs on the south side of Richmond. He said that Easter Hill and North Richmond gangs were feuding with the Crescent Park gang. In response to Ellis's question as to why someone might connect him to the shooting, he said it was because of his gang affiliation. Defendant told Ellis that he could go into the Easter Hill area but that things were strained there because his brother was shot in Easter Hill, and a Crescent Park Villains' member warned him that he and his brother should stay out of Easter Hill. Defendant said he was "cool" with members of both the Easter Hill and One Way gangs.
>
> Tirona testified that he has worked as a police officer in Richmond for 10 years. In 2000, he worked in the gangs and firearm unit of the Richmond Police Department and, as a result of his continuing work in Richmond, he was familiar with gangs in the area. Through his work, he determined that Crescent Park and Easter Hill were rival gangs. He knew that the gangs took their names from the geographic areas in which the members resided. He

---

[1] If this is correct, the claim of course is exhausted, having been presented and decided on direct appeal.

5

testified that witnesses in gang areas were very reluctant to assist the police because they feared violence.

Davis testified that Small told her the morning after the shooting that Boo Bang[2] killed Skinner. Nicole Moore, Skinner's sister, also testified that she heard Small say the killer looked like Boo Bang. Moore identified defendant as the person she knew as Boo Bang.

Officer Debra Noonen testified that she had worked as a police officer for 20 years and that she knew defendant since 1986 as someone associated with Easter Hill. She lost track of him in the early 1990's and later learned that he was staying outside the area. She testified that there was animosity between Easter Hill and Crescent Park in the 1990's and early 2000's. She stated that she would be surprised to see defendant in Crescent Park because it is not customary for people who identify themselves with a particular gang or area to go to another area without some sort of mutual friendship or alliance. Noonen opined that defendant's affiliation with Easter Hill put him at odds with Crescent Park.

Based on this evidence, the prosecutor sought to prove at trial that Skinner was a member of or affiliated with the Crescent Park Villains gang and thus a potential target. Defense counsel, in turn, argued there was no evidence that Skinner was a gang member, and that simply associating with people in Crescent Park did not make him a target.

The trial court determined there was insufficient evidence to show that defendant was a gang member or that Skinner was a gang member or a target for gang violence. It ruled, however, that it would permit the prosecution to introduce evidence that witnesses might fear gang retaliation for testifying and that there was a rivalry between the Crescent Park and Easter Hill areas, particularly given Small's reluctance to testify. "I'm certainly willing to allow the evidence-especially due to the vacillation [of Small]-evidence of the significance of fear of gangs and retaliations in these neighborhoods in Richmond. I think that's fair game. [¶] I think it's appropriate to have evidence of the knowledge of bodies of people that are associated territorially and what seemed to be common knowledge, that the Easter Hill people and Crescent Park people did not get along."

*People v. McHenry*, 2006 WL 1727322 at *2-3.

The Ninth Circuit recently addressed whether a state court's admission of evidence can be the basis for federal habeas relief. In *Holley v. Yarborough*, 568 F.3d 1091 (9th Cir. 2009), the court said:

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear

---

[2] Defendant moved in limine to exclude any reference to his nickname, Boo Bang. The trial court reserved ruling on the issue prior to trial, noting that the name was prejudicial and that it would be excluded "[u]nless it has some significance in and of itself." The court ultimately excluded the evidence of the nickname. [Footnote in original.]

6

> that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, *see Williams* [*v. Taylor*,] 529 U.S. [362,] [] 375 [2000], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling [admitting evidence] was an "unreasonable application."

*Id.* at 1101. Thus, Petitioner's contention that the gang evidence was irrelevant and unduly prejudicial cannot be the basis for federal habeas relief. The claim will be denied for that reason, but alternatively, the Court also will consider whether there was constitutional error.

The Ninth Circuit has held that admission of evidence cannot be a due process violation unless (1) there were no permissible inferences the jury could draw from the evidence, *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991), and (2) admitting the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair, *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). In this case, as the trial court and court of appeal held, the jury could draw a permissible inference from the evidence, namely that witnesses were reluctant to testify, or testified inconsistently with prior testimony, out of fear of gangs. *See McHenry*, 2006 WL 1727322 at *2-3. There thus was no due process violation even under Ninth Circuit standards. This claim is without merit.

## II.     Competence of Witness

In his second claim, Petitioner alleges that his due process rights were violated when the trial court allowed a witness to testify who was under the influence of alcohol and drugs at the time of the offense.

Respondent contends that this claim is not exhausted. Petitioner presented the claim in his California Supreme Court habeas petition without saying which witness he meant. (Ex. F at 4.) It was, however, clear from his citations to the record and his reference to the witness as the prosecution's "star witness" that he meant Denisha Small, the woman who drove the victim to the market and saw the murder. This claim is exhausted.

7

///

The veracity or competence of a witness is generally a matter of state law and not a federal question. *Schlette v. California*, 284 F.2d 827, 834-35 (9th Cir. 1960). However, if state or federal law provides that a competency determination must be made and the defendant raises a colorable objection to the competency of the witness, failure to conduct an appropriate hearing implicates a defendant's due process rights. *Walters v. McCormick*, 122 F.3d 1172, 1176 (9th Cir. 1997).

Petitioner's claim is that the witness's ability to perceive facts and events at the time of the crime was impaired by her consumption of alcohol and drugs. As Respondent points out, this is not a competency claim, because it does not go to the witness's ability to recall facts and relate them at the time of trial. *See People v. Dennis*, 17 Cal.4th 468, 525 (1998) (defining competence). The trial court thus was not obliged by due process to hold a hearing on the witness's competency. The claim is instead a contention that she lacked the capacity to observe at the time of the crime, a matter of credibility and thus no basis for federal habeas relief. *See Schlette*, 284 F.2d 834-35. This claim is without merit.

### III. Sufficiency of the Evidence

Petitioner contends that there was insufficient evidence that he was the shooter.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *id.* at 324. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have

found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. When considering a sufficiency of the evidence claim the Court must "view[] the evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, so must assume that the jury believed the witnesses.

In this case, evidence was admitted that witness Small had picked Petitioner out of a photographic lineup, and her insistence at trial that she could not identify the shooter was explained by her admission that she feared gang retribution. (*People v. McHenry*, 2006 WL 1727322 at *1-2.) She also testified that the shooter wore a peacoat; a peacoat was found in Petitioner's closet when he was arrested. (*Id.* at *1.) The peacoat had gunpowder residence on the sleeve. (*Id.*)

A rational jury could have concluded from this evidence that Petitioner was the shooter. This claim is without merit.

**IV.    Confrontation Rights**

Petitioner's fourth issue is headed: "'Testimonial' evidence obtained and allowed without opportunity for cross examination was admitted by way of hearsay." His "supporting facts" are mostly about the trial court's decision to admit evidence of gang activity in Richmond to explain Small's reluctance to testify, which seem to be the same facts as underlie issue one, above, except for his last sentence, which reads: "Petitioner has the constitutional right to confront, cross examine, and rebut any/all allegation and was denied this right based on how said information was slick legged into the process." He raised this claim in a very similar way in his state petition. (Ex. F at 6.)

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). Habeas corpus petitions must meet heightened pleading requirements. *McFarland v. Scott,* 512 U.S. 849, 856 (1994). An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court must "specify all the grounds for relief

9

which are available to the petitioner ... and shall set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970). "Habeas petitions which appear on their face to be legally insufficient are subject to summary dismissal." *Calderon v. United States Dist. Court (Nicolaus)*, 98 F.3d 1102, 1108 (9th Cir. 1996) (Schroeder, J., concurring).

Both in state court and here Petitioner has failed to say what witness he was unable to confront, what evidence was hearsay, or what witness repeated the hearsay statements. It simply is not possible to tell what the claim is. In short, in this claim Petitioner has not pointed to a real possibility of constitutional error, so the claim is without merit.

## V.     Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel was ineffective.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737

10

(9th Cir. 1998). Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.

Petitioner says counsel was ineffective in several ways. Unfortunately, once again it is difficult to discern the basis for the claim, with one exception. The exception is Petitioner's assertion that counsel was ineffective in not objecting to the testimony that is the subject of claim one, discussed above. In the discussion above the Court concludes that admission of the evidence did not violate Petitioner's constitutional rights, and the California Court of Appeal concluded on direct appeal that it did not violate California law.

Because there was no constitutional violation and because the court of appeal's holding as to California law is binding on this Court, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), it is clear that an objection would have been overruled. It is not ineffective assistance for counsel to refrain from making a meritless objection. *See Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008). This part of the claim is without merit.

Petitioner also says that counsel failed to object to an insufficient foundation for the testimony of "the peoples['] key witness," presumably Small, and that the relevance of unspecified evidence was not established, in that "the actual existence of the preliminary fact of petitioner being the perpetrator of the crime *was and remains highly questionable*." (Amen. Pet. at (unnumbered) 6 (emphasis in original).) No further facts are provided. This is not sufficient to allege a "real possibility of constitutional error," Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970), so these additional claims of ineffective assistance – if indeed they actually are intended to be additional claims – will be summarily denied. *See United States Dist. Court (Nicolaus)*, 98 F.3d at 1108 (petitions that on their face are legally insufficient should be summarily dismissed) (Schroeder, J., concurring).

**VI.    Ineffective Appellate Counsel**

11

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*, 466 U.S. 668. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694; *Birtle*, 792 F.2d at 849).

Petitioner contends that appellate counsel was ineffective in failing to raise the issues he raises here. Because the Court has determined above that none of Petitioner's issues has merit, he would not have prevailed on appeal had they been raised. This claim is without merit.

**VII.  Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

///

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED. A certificate of appealability is DENIED. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: June 29, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\JSW\HC.07\McHenry2334.RUL.wpd

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY T. MCHENRY, | Case Number: CV07-02334 JSW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| TOM FELKER et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 29, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bobby T. McHenry
V62322
Calipatria State Prison
Calipatria, CA 92233

Dated: June 29, 2010

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk